LOTTINGER, Judge.
This case, and the case entitled Amos Jackson et al. versus John E. Perkins, were, by consent of counsel, consolidated for the purpose of trial. Separate judgments were rendered, and both cases are now before us on appeal. The facts of each case are similar, and are as follows:
Sometime during the latter part of the year 1942, numerous Negroes operated taxicabs in the City of Baton Rouge. A number of them carried no insurance against liability or property damage. They paid no franchise tax and operated generally as they pleased.
In 1942, the Commissioner of Parks and Streets in the City of Baton Rouge demanded that these operators comply with the appropriate city ordinances regulating taxicabs, particularly with the ordinance requiring the carrying of liability and property damage insurance. As a result of this demand, some of these taxicab operators held a meeting at a place in the City of Baton Rouge and organized a sort of voluntary association to be known as Union Taxi Line. This organization was neither a partnership nor a corporation.
The object and purpose of the organization was to assist the members in obtaining public liability and property damage insurance; to provide for the payment and remission of the insurance premiums and franchise taxes due by the members and generally to attend to the affairs of the association.
Defendant, John E. Perkins, was employed as manager of the Union at a salary of $60 per month. He also held the title of Public Relations Officer and, according to the By-Laws of the Union, his duties were as follows:
“Public Relations Officer: Shall have full power and authority to adjust and settle all claims arising against the Union Taxi Line, and to perform such supervisory powers as may be delegated to him by the Union. He shall receive compensation for his services, the same is hereby fixed a* sixty and no/100 ($60.00) dollars, pei month, by the Union. The Public Relations Officer is authorized, empowered and instructed for and on behalf of each and "every member of the Union Taxi Line to see to it that all laws, rules and regulations of the City, Parish and State, relative to operating vehicles for hire by members of the Union are obeyed at all times.”
The By-Laws further provide:
“That John E. Perkins, is hereby appointed Public Relations Officer for and on behalf of the Union Taxi Line, and the members thereof, and he is hereby authorized and instructed to. purchase and keep on deposit, the required amount of insurance, bond or bonds, as may from time to time be required by the City Ordinance; and to. perform such other duties as may be delegated to him by the Union Taxi Line, or incidental to the function of his office.”
Perkins, as manager of the Union Taxi Line obtained a policy of insurance with Lloyds of London for the year 1943-1944. This policy was intended to cover the cabs of all of the members. Thereafter the insurance was carried by the Protective Indemnity Company and was effec *569 tive from August 7, 1944, to August 7, 1945. Subsequently, it was renewed for the years 1945-1946, but later was cancelled. Certain buses were also covered by this policy, though not required by city ordinance.
From June 6, 1946, to June 7, 1947, the Keystone Mutual Casualty Company issued a policy to cover 75 cabs. This policy was subsequently renewed on June 7, 1947, to cover the same number of cabs. On or about June 25, 1947, the Keystone Mutual Casualty Company went into the hands of a receiver, and the policy issued by it was cancelled.
At about this time, it was difficult to secure insurance on taxicabs, and Perkins was unable to get insurance covering the cabs owned by members of the Union. As the Union Taxi Line was the only colored taxi company operating in the City of Baton Rouge, the Commission Council of that city, in order to provide taxi service for its colored residents, passed an ordinance allowing the Union to deposit with the city a $5,000 bond in lieu of insurance. The pertinent part of said ordinance for our purposes reads as follows:
“ * * * Also, there may be accepted in lieu of such bond or insurance policy a cash deposit of $5,000.00, which shall be deposited with the Commissioner of Finance of the City of Baton Rouge by each person, firm or association of persons or corporation, carrying on a public transportation service as herein defined to stand as security or indemnity to any person or persons, who may sustain damage to his or their person or property as a result of the negligence of the person, firm, association of persons or corporation conducting such business, or his or their agent, servant or employee, he or they shall have his or their right of action on such deposit for such damage. The full amount of said $5,000.00 shall also be maintained at all times, and in the event same shall be reduced by payment therefrom, under the terms of the provisions of this ordinance and the obligation of its deposit, the person, firm, association or corporation shall furnish an additional sum equivalent to the amount which may have been paid out of the original $5,000.00 so that at all times there shall be deposited the full sum of $5,000.00 herein provided for. In event such insurance shall be furnished in lieu of bond, the policy or policies of such insurance shall be delivered to and shall be approved by the Commissioner of Finance of the City of Baton Rouge and shall be kept constantly in force.”
The said ordinance was adopted on July 16, 1947. More than a year, thereafter, if the testimony pertaining thereto is true and correct (which most, if not all the plaintiffs, deny) a resolution was adopted by the members of the Union Taxi Line, reading in part as follows:
“Whereas, the insurance has been cancelled by Protective Indemnity Company on all buses operating under Permit No. 4, and
“Whereas, the insurance has 'been cancelled by Keystone Casualty Company on all taxicabs operating under Permit No. 4, and
“Whereas, the city has notified all operators to secure insurance coverage as required by City Ordinance or post a bond to guarantee the payment of all claims arising out of the operation of any vehicle operating under Permit No. 4, and
“Whereas, John E. Perkins, has agreed to post a bond with the City pending the securing of insurance coverage as required by the City officials, and
“Whereas, we have pledged ourselves to pay the same amount of monthly premium to the said John E. Perkins, or any person or persons who will sign a bond to satisfy the city officials, pending the securing of insurance coverage.
“Therefore, Be It Resolved, that we, the Colored Taxicab and Bus Operators members of the Union Taxi Line, operating under Permit No. 4, pledge ourselves to pay the same amount of *570 monthly premiums to John E. Perkins, or any person or persons who will sign a bond satisfactory to the City Officials.
“Be It Further Resolved, that in the event any claim arises and the said Bondsmen does not have sufficient funds with which to pay said claim, we will prorate the total amount between ourselves necessary to make up any deficiency. Be It Further Resolved, that each member of the Union Taxi Line will be subject to the same rules and regulations as originally adopted for the members of the Union. Members present and voting: Elliott Ambeau, Burn Bady, Thomas Williams, Thomas Buffington, Nathaniel Butler, Jessie Young, Percy Grise, Wilbert Dawson, Willie Fox, Leon Harriel, Steven Kinsey, Leo Johnson, Lula Stull, Mack Williams, Joe White, W. L. Robertson, Edmond Stewart, Ambrose Johnson, Ulysses Coates, John W. Tilley, Rivers Johnson, Wilbert Jones, Thomas Wicks, Alfred Wetherspoon, Louis Johnson, W. B. Brown, Joe Chandler, Elijah Dangerfield, William Forbes, Arthur Franklin, Henry Franklin, Solomon Myers, Eddie Smith, Freddie C. Thomas, Ernest Williams, Matthew Williams. Absent and not voting: Joseph Henderson, Harry Craig, Robert Jackson, Richard Fort.
Prior to the date of this resolution, namely on August 22, 1947, the defendant Perkins posted with the City of Baton Rouge a $5,000 cash bond to cover the operation of all cabs and buses from August 22, 1947, operating under permit 4 of the Union Taxi Line. This deposit remained until August 27, 1948. There was no insurance carried other than this $5,000 bond for all cabs from August 22, 1947, to August 27, 1948.
On August 7, 1948, a policy of insurance was issued with Underwriters at Lloyds to cover 33 cabs, said policy having been can-celled in May, 1949. Upon obtaining this last named policy, the cash 'bond for $5,000 was refunded to Perkins, however, he was first required to execute a mortgage to remain in effect for one year to secure any claims for damages which may have arisen between August 22, 1947, and August 7, 1948.
The lower court held that the petitioners were entitled to refunds from defendant for insurance premiums paid by them during the periods while the bond was on deposit and the Lloyds policy was in force. The defendant has taken this appeal.
The defendant claims, that although no insurance was in effect from August 22, 1947, to August 7, 1948, the bond was on deposit with the city which fulfilled all the requirements of the City Ordinance. As to the period after August 7, 1948, defendant admits that not all the members of the Union were covered by insurance. He claims the reason to be that some of the cabs failed to pass inspection by the insurance company, and claims that, after certain repairs had been made to some of these cabs, they were added to the insurance policy by endorsement.
Some thirty odd witnesses testified in these matters. Of course, as there are a number of petitioners, the greater number of witnesses were on behalf of petitioners. The greater number of witnesses for petitioners, were petitioners themselves. Most of the witnesses were colored taxi drivers of limited education. There is a great volume of testimony in the record, and it is filled with contradictions.
As to the petitioners themselves, almost every one of them denied knowledge of the $5,000 bond which was deposited with the City of Baton Rouge. They further denied any knowledge that the insurance policies issued to the Union all contained substantial deductible clauses. On direct examination, the petitioners all denied any accidents by their individual cabs wherein there was any liability to third parties. However, on cross-examination, it was shown, and finally admitted by petitioners, that there had been numerous accidents wherein the damages to third parties were settled either 'by the Union or the insurance companies.
We are convinced, and the testimony conclusively shows that the petitioners’ only interest in the Union was to protect *571 their rights to operate their taxicabs in the City of Baton Rouge. As to the method in which the Union was managed, the names of their insurers, the amounts of insurance, and other matters dealing with the purposes and management of the Union, the petitioners knew almost nothing. It was further shown that their lack of knowledge was due to their lack of interest. City officials testified that not once did any of the petitioners appear at the City Hall to ascertain whether they were covered by the bond or an insurance policy. The only time any of the petitioners showed any interest in the Union was when they were reported to the City Officials by the Union for delinquency in payment of franchise tax and their right to operate their cabs was revoked. Whenever their said right was revoked, they placed the blame on defendant. The blame, however, was that of petitioners themselves, as there was an arrangement whereby the Union would collect the franchise taxes for the city, and whenever any individual cab owner was delinquent in payment of said tax the Union was required to report such delinquency to the city.
Petitioners’ claims for return of insurance premiums paid the Union during the period from August 22, 1947, to August 7, 1948, is without merit. The evidence shows that it was very difficult to obtain liability insurance coverage during that time. Although the Union and Perkins attempted to secure coverage during said period, they were unsuccessful. The defendant, faced with an extremely difficult situation, made an arrangement with the City Officials whereby the Union was permitted to post a cash bond in lieu of insurance. During the period in which the bond was posted, no reduction was made in the bond. In other words, all claims against members of the Union for damages caused by their cabs were settled out of the premiums paid by the members. The Union, during said period, served the purposes for which it was organized, and we do not believe that the members may now claim otherwise.
An itemized statement was introduced by defendant to show the premiums paid to the Union, and the damage claims paid by the Union, during the period from January, 1948, to May 31, 1949. The sums collected were in the amount of $28,-866, whereas the damages with attorney fees paid out were in the sum of $30,697.-52. This same statement shows that, during this said period, the defendant loaned the Union the sum of $1,000 in order to settle a claim against one of the members. In other words, the liabilities of the Union were substantially in excess of the receipts. Although a similar statement was not provided for the period in which the bond was posted prior to January, 1948, the evidence shows that the damages paid out must have been substantial. We believe that, contrary to the claims of petitioners, the defendant Perkins derived no personal enrichment from his office as Public Relations of the Union other than the $60 salary paid him, and the evidence shows that he possibly paid certain Union obligations from his personal funds.
We believe the above to apply also to the period in which the insurance policy was in effect with Underwriters of Lloyds. Although the said insurance policy did not cover all members of the Union, we believe that those members who were omitted therefrom were omitted because their cabs would not pass inspection. It was shown that several members were added by endorsement some time after the policy had been issued. Defendant claims that said additions were made after their cabs had been repaired so as to pass the insurance inspection. We believe this to be correct. Furthermore, it is shown that even those members not included in the policy received benefit from the Union in that their damage claims were settled by the Union. It appears to us that the petitioners, after receiving the benefits for which they organized the Union, are now attempting to recover the amounts that they paid for said benefits.
In addition to return of insurance premiums, the lower court allowed petitioners to recover certain sums paid the Union as franchise taxes subsequent to August, 1948. Said sums were paid the Union and were to be remitted to tire City of Baton Rouge *572 in payment of said taxes. It was testified, by certain officials, that the Union paid taxes in accordance with the number of cabs listed on the insurance policy with Lloyds. The said policy listed 33 cabs, and testimony would indicate that taxes were paid only on the 33 cabs listed. Letters dated January 10, 1949, and October 9, 1948, from the Union to the 'Commissioner of Finance were introduced into evidence and show that, on those dates, the franchise taxes were paid on 33 cabs. The defendant, Perkins, testified that franchise taxes were paid the City on every calb the owner of which had paid his tax to the Union. The testimony of the City Officials and the said letters would indicate that the taxes forwarded the city was to be credited to the 33 cabs listed on the Lloyds insurance policy. Be that as it may, we do not believe that the owners of the calbs not listed on the insurance policy would be entitled to a refund of the taxes they paid the Union, because such funds went to the benefit of the members of the Union. The evidence shows that the defendant, Perkins, was merely an employee of the Union. There was no evidence to show that he personally received the sums paid to the Union as taxes. It is true that the said sums were paid at defendant’s office. Plis secretary, Miss Mary Mason, was also the secretary of the Union. Receipts given for the taxes paid the Union were issued by Miss Mason; She signed Perkins’ name to the receipts and placed her initials thereunder. In most instances, the receipts were stamped “Union Taxi Line” by rubber stamp. The evidence shows that defendant received said funds as representative of the Union and not as an individual. There is no evidence that said funds were deposited to defendant’s personal account, or that he received any personal benefit from said funds, but all to the contrary, said funds were used for the benefit of tire members of the Union.
Considering the record as a whole, we believe the lower court to have placed too much faith in the testimony introduced on behalf of petitioners, much of which was contradictory. We further believe that petitioners failed to show that defendant received any personal benefits 'from the funds paid into the Union. Considering the record as a whole, we believe that all funds paid into the Union were used for the benefit of the members thereof. We believe the judgment below must be reversed.
For the reasons assigned, the judgment of the lower court is annulled, avoided and reversed and plaintiffs’ suit dismissed at their costs.
Judgment reversed.